38 F.3d 1219
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Bradley Jay MONTGOMERY, Defendant-Appellant.
 Nos. 94-10262 to 94-10264, and 94-10327.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 3, 1994.
Decided Oct. 19, 1994.
 
 1
 Before: PREGERSON and WIGGINS, Circuit Judges, and LEW,* District Judge.
 
 
 2
 MEMORANDUM**
 
 OVERVIEW
 
 3
 Appellant Bradley Jay Montgomery appeals his concurrent sentences imposed under U.S.S.G. Sec. 5G1.3(b) and the Arizona U.S. District Court's denial of his Fed.R.Crim.P. Rule 35(c) motion to correct sentence. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291 and Rule 4(a) of the Federal Rules of Appellate Procedure. We reverse and remand for resentencing.
 
 BACKGROUND
 
 4
 Between November 30, 1991, and March 7, 1992, Appellant Bradley Jay Montgomery stole mail from rural mail boxes in Lexington, Kentucky. The stolen mail included personal checks, credit cards, blank pre-printed checks and other banking information. Montgomery took the stolen mail with him when he traveled to Arizona in March 1992.
 
 
 5
 From March 19, 1992 to April 8, 1992, Montgomery stole mail in Arizona and, with the mail previously stolen in Kentucky, Montgomery defrauded financial institutions in Arizona. To perpetuate fraud, Montgomery would fill out pre-printed blank checks, deposit them in various Arizona bank accounts and then withdraw some or all of the funds he had deposited earlier, converting them for his personal use.
 
 
 6
 In April 1992, while Montgomery was traveling through Texas on his way back to Kentucky, he was pulled over by local authorities. Upon checking, the authorities discovered that Montgomery had an outstanding Texas state warrant for violation of probation. The authorities also discovered in Montgomery's car numerous personal checks deposited into checking accounts belonging to other individuals, and mail with Kentucky addresses.
 
 
 7
 Montgomery was prosecuted in the U.S. District Court for the Northern District of Texas for possession of stolen mail. He received a 24-month federal sentence which he began serving in a federal prison in Texas on September 18, 1992. The 24-month sentence was at the high end of the sentencing range under the Sentencing Guidelines.
 
 
 8
 Following his conviction in Texas, Montgomery initiated contact with United States postal inspectors in Kentucky and Arizona to inform them of his other stolen mail activities in their jurisdictions.
 
 
 9
 Based on these communications, Montgomery was indicted on July 7, 1993 in the U.S. District Court for the District of Arizona on eleven counts of bank larceny in violation of 18 U.S.C. Sec. 2113(b) and ten counts of bank fraud in violation of 18 U.S.C. Sec. 1344(1). These offenses stemmed from his deposits and withdrawals using the pre-printed blank checks and other banking information which Montgomery had stolen from the mail in Kentucky and Arizona.
 
 
 10
 On August 31, 1993, Montgomery filed a petition for writ of habeas corpus ad prosequendum in the U.S. District Court for the District of Arizona. The petition was granted by the Arizona U.S. District Court and Montgomery was transferred from the federal prison in Texas to stand trial in the Arizona U.S. District Court on the bank fraud and bank larceny charges.
 
 
 11
 On September 22, 1993, Montgomery was arraigned in U.S. District Court in Arizona where he entered a plea of not guilty.
 
 
 12
 At about the same time, federal prosecutors in Kentucky were preparing to charge Montgomery with theft of stolen mail in violation of 18 U.S.C. Sec. 1708, and credit card fraud for using credit cards stolen from the mail in violation of 18 U.S.C. Sec. 1029(a)(2). On January 13, 1994, Montgomery filed a Rule 20 Consent to Transfer Case for Plea and Sentence from the U.S. District Court for the Eastern District of Kentucky to the U.S. District Court in Arizona. Montgomery agreed to plead guilty in Arizona to the Kentucky federal charges, waive his right to trial in Kentucky, and have the disposition of the Kentucky federal charges take place in the Arizona U.S. District Court.
 
 
 13
 On February 28, 1994, Montgomery entered into separate plea agreements with federal prosecutors in Kentucky and Arizona on the federal charges pending in those states. As part of his plea agreement with the U.S. Attorney in Arizona, Montgomery agreed to change his plea to guilty to reduced charges. In his separate plea agreement with the U.S. Attorney in the Eastern District of Kentucky, and pursuant to Rule 20, Montgomery pled guilty to both counts of an information filed in the Eastern District of Kentucky. As part of both plea agreements, Montgomery waived his right to appeal his sentences under 18 U.S.C. Sec. 3742.
 
 
 14
 Montgomery was sentenced in Arizona U.S. District Court on May 9, 1994. At the time of Montgomery's sentencing, the Sentencing Guidelines range for the sum total of federal charges against Montgomery in Texas, Arizona, and Kentucky was 24 to 30 months.[1] The Arizona U.S. District Court sentenced Montgomery under U.S.S.G. Sec. 5G1.3(b) to 24 months to run concurrently on all charges in the Arizona and Kentucky plea agreements. The District Court stated in the judgment order that the Arizona/Kentucky concurrent federal sentences were to run concurrently with the previously imposed 24-month federal sentence Montgomery had received in Texas.
 
 
 15
 At the time of Montgomery's sentencing in Arizona, he had already served 16 of the 24 months on the Texas sentence. The Bureau of Prisons, however, would not credit Montgomery's 16-months time served in the federal prison in Texas against the 24-month Arizona/Kentucky concurrent sentences because the Bureau of Prisons applies a concurrent sentence only prospectively.[2] Thus, Montgomery's 24-month Arizona/Kentucky sentences could be served concurrently with only the 8 remaining months on the Texas sentence. Consequently, Montgomery's two sentences in fact required 40 months imprisonment--16 months already served in Texas, plus the 24-month Arizona/Kentucky concurrent sentences to run concurrently with the remaining 8 months of the Texas sentence. When Montgomery learned that the Bureau of Prisons would not credit the 16 months he had already served to the 24-month Arizona/Kentucky sentences, he filed a motion to correct sentence under Rule 35(c) Fed.R.Crim.P. in the U.S. District Court in Arizona.
 
 
 16
 At the Rule 35 hearing on May 16, 1994, the Arizona U.S. District Court stated it would consider the Sentencing Guidelines provisions which Montgomery proffered to demonstrate how the District Court should correct Montgomery's sentences. However, the District Court indicated that its inclination was to deny the motion to correct his 24-month Arizona/Kentucky concurrent sentences.[3] The District Court reasoned that if it adjusted Montgomery's 24-month concurrent sentences it would be structuring its sentences to a sentence imposed in another district (the Northern District of Texas); the District Court believed that this would violate the Sentencing Guidelines.
 
 
 17
 The District Court further observed that if it did not adjust Montgomery's sentence, the court would "run afoul of what the Bureau of Prisons deems as the appropriate way to compute concurrent sentences." The Arizona U.S. District Court denied Montgomery's motion in an order dated May 31, 1994.
 
 
 18
 Montgomery filed a Notice of Appeal on May 18, 1994, appealing his concurrent Arizona/Kentucky sentences because the sentencing order resulted in his serving 40 months before completing his imprisonment. Montgomery filed a Notice of Appeal with respect to the Rule 35 motion on June 2, 1994. These appeals have been consolidated.
 
 ANALYSIS
 1. Waiver as a Bar to Appeal
 
 19
 Montgomery contends that he may appeal the Arizona U.S. District Court's 24-month concurrent sentences even though he waived his right to appeal in his plea agreements. Montgomery claims that because his 24-month Arizona/Kentucky concurrent sentences in effect became a 40-month sentence, the sentencing terms of his Arizona/Kentucky plea agreements which indicated that he would not serve in excess of that recommended in the Sentencing Guidelines were violated. Montgomery asserts that such a violation establishes adequate grounds to set aside his waivers.
 
 
 20
 The Government contends, however, that the waivers in Montgomery's plea agreements bar his present appeal. The Government maintains that Montgomery freely and voluntarily entered into his plea agreements and "understood all of the terms of his plea agreements." Further, the Government contends that Montgomery has no constitutional right to appeal, citing Jones v. Barnes, 463 U.S. 745 (1983).
 
 
 21
 Whether an appellant waived his statutory right to appeal is a matter of law we review de novo. United States v. Bolinger, 940 F.2d 478, 479 (9th Cir.1991); United States v. Navarro-Botello, 912 F.2d 318, 320 (9th Cir.1990), cert. denied, --- U.S. ----, 112 S.Ct. 1488 (1992).
 
 
 22
 As part of the Arizona/Kentucky plea agreements, Montgomery waived his statutory right to appeal provided in 18 U.S.C. Sec. 3742. He contends, however, that the waiver is not applicable in his case because the Arizona U.S. District Court's concurrent sentences that resulted in his having to serve 40 months violated the terms of his Arizona/Kentucky plea agreements. Montgomery claims that his understanding of the full term of his sentence under the plea agreements entered into in both Kentucky and Arizona was that he would serve no time in excess of 24 months, including the Texas sentence on which he had already served 16 months.
 
 
 23
 Montgomery relies on United States v. Serrano, 938 F.2d 1058 (9th Cir.1991) for support. In Serrano, we stated that "a waiver does not apply when a party contends ... that a sentence was not in accordance with a plea agreement." Id. at 1060 (citing United States v. Navarro-Botello, 912 F.2d 318, 320 (9th Cir.1990)). Further, in Serrano we stated that if the district court "accepted the sentence term, it must resentence [the defendant] in accordance with the plea agreement...." Id. at 1061. And, if the district court "rejected the sentence term, it should have informed [the defendant] of its decision and afforded him an opportunity to withdraw his plea." Id. Thus, under Serrano, a defendant may appeal his sentence despite a signed waiver in his plea agreement if the term that he received at sentencing violated the terms of his agreement.
 
 
 24
 We further elaborated on this issue in United States v. Torres, 999 F.2d 376 (9th Cir.1993). There, we stated that we would consider a defendant's claim that he was sentenced in violation of his plea agreement if the defendant did not have a "wholly unreasonable" expectation of what would be the district court's sentence. Id. at 378 (citing United States v. Serrano, 938 F.2d 1058, 1060 (9th Cir.1991)).
 
 
 25
 In contrast, the Government relies on United States v. Navarro-Botello, 912 F.2d 318, 321-22 (9th Cir.1990), cert. denied, --- U.S. ----, 112 S.Ct. 1488 (1992), to support its position that the waivers in Montgomery's plea agreements bar his present appeal because the waivers were given knowingly and voluntarily. The Government's position misses the point. Although we generally uphold a plea agreement provision waiving appeal, in cases such as Serrano and Torres we have established an exception to this general rule. If the defendant can demonstrate that he had a reasonable expectation of a sentence other than that which he received, his signed waiver in his plea agreement will not bar his right to appeal.
 
 
 26
 The Government offers United States v. Bolinger, 940 F.2d 478 (9th Cir.1991), as an example of where we upheld a plea agreement right to appeal waiver even though the district court may have misapplied the Sentencing Guidelines. Bolinger, however, is inapposite. There, we upheld the waiver because the actual time served was not affected by whether the district court may have misapplied the Sentencing Guidelines. In Bolinger, the defendant was not sentenced in excess of the maximum indicated in his plea agreement, which defined the defendant's reasonable expectation of his sentence.
 
 
 27
 In the present case, we find that Montgomery's assertion that he reasonably expected that his sentence would not result in a 40-month sentence has merit. As explained below, the Arizona U.S. District Court indicated both from the bench and in its written order that Montgomery would receive a 24-month sentence on each charge in Arizona and Kentucky to be served concurrently with the sentence from the U.S. District Court for the Northern District of Texas. We therefore find that Montgomery's signed waivers in his plea agreements do not bar this appeal.[4]
 
 
 28
 2. Proper Application of the Sentencing Guidelines
 
 
 29
 Montgomery does not argue that the Arizona U.S. District Court misapplied the Sentencing Guidelines when it stated (as quoted below) that Montgomery was to receive concurrent 24-month sentences on all charges in Texas, Arizona, and Kentucky as specified in the plea agreements. Rather, Montgomery contends that the District Court misapplied the Sentencing Guidelines when it did not structure its sentencing order so that the written order would achieve this result.
 
 
 30
 The Government contends that the District Court properly applied the Sentencing Guidelines and that Montgomery should take up with the Bureau of Prisons any sentencing discrepancy resulting from the Bureau of Prisons' implementation of his Arizona/Kentucky 24-month concurrent sentences.
 
 
 31
 We review the District Court's interpretation of the Sentencing Guidelines de novo. United States v. Blaize, 959 F.2d 850, 851 (9th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 2954 (1992). Application of the Sentencing Guidelines is also reviewed de novo. United States v. Fagan, 996 F.2d 1009, 1017 (9th Cir.1993); United States v. Myers, 993 F.2d 713, 714 (9th Cir.1993); United States v. Lawrence, 916 F.2d 553, 554 (9th Cir.1990).
 
 
 32
 First, (as demonstrated below), we note that Montgomery and the Government agree that Montgomery's federal charges in Texas, Arizona, and Kentucky reflect a single course of conduct and that U.S.S.G. Sec. 5G1.3(b) controls Montgomery's sentence.[5] As Ms. Fine, defense counsel for Montgomery, explained to the Arizona U.S. District Court at the May 9, 1994 sentencing hearing:
 
 
 33
 Mr. Montgomery's prior Texas conviction was from the same course of conduct that both of the cases the Court has in front of it today was from.
 
 
 34
 * * *
 
 
 35
 * * *
 
 
 36
 Because the Guidelines applicable to Mr. Montgomery's case ... are clear that when the person has an undischarged term of imprisonment from another federal sentence, then all of the federal sentences should be imposed to make it just like they had been imposed at the same time.
 
 
 37
 * * *
 
 
 38
 * * *
 
 
 39
 Additionally, the Guidelines separately say that if the same course of conduct is at issue in the previous sentence, then they should be run concurrent, as well.
 
 
 40
 So ... Mr. Montgomery is in front of you to be sentenced under the Guidelines that the parties and the probation office are all in agreement give this Court the power to impose a sentence on Mr. Montgomery just like all three Districts were being imposed at once.
 
 
 41
 * * *
 
 
 42
 * * *
 
 
 43
 We would ask that this Court not give Mr. Montgomery any additional time.
 
 
 44
 Following Ms. Fine's explanation to the District Court, the Government stated its agreement:
 
 
 45
 Your Honor, I concur in Ms. Fine's analysis of the sentencing situation. The government has agreed that it would not recommend any sentence to this Court. I think she has set forth sufficiently what--what my understanding is of the law, what the court's alternatives are.
 
 
 46
 And she has correctly stated that--that Mr. Montgomery did cooperate with the authorities with regard to our case here in Arizona. It was a matter of having the case brought to us, and then contact was made with him. He initiated that contact, and he did cooperate with the authorities.
 
 
 47
 Further, the Arizona U.S. District Court reluctantly agreed with Montgomery and the Government that Sec. 5G1.3(b) controls Montgomery's sentences. The District Court remarked at Montgomery's sentencing hearing that Montgomery was "indeed fortunate, because but for this interpretation as presented in [Sec. 5G3.1(b) ] the Sentencing Reform Act guideline sentencing," Montgomery would be serving many more years. The Arizona U.S. District Court then stated:
 
 
 48
 [I]t is the judgment of the Court that ... Montgomery ... be imprisoned for a term of 24 months on each count, to be served concurrently, in CR 93-230 [Arizona federal charges] ... and in CR 94-51 [Kentucky federal charges]....
 
 
 49
 The term of imprisonment imposed by this judgment shall run concurrently with your term of imprisonment imposed in Docket No. 2-92-CR-32 in the Northern District of Texas.
 
 
 50
 The Arizona U.S. District Court's written judgment was similarly worded:
 
 
 51
 Defendant is committed to the custody of the Federal Bureau of Prisons for a term of twenty-four (24) months on each of Counts ... in CR 93-230 ... and Counts ... in CR 94-51 ... all to run concurrently and to run concurrently with sentence imposed in 2:92-CR-32 Northern District of Texas....
 
 
 52
 Montgomery, therefore, does not contend the Arizona U.S. District Court erred when it sentenced him to 24-month concurrent sentences to run concurrently with the 24-month Texas sentence. Montgomery argues instead that the Arizona U.S. District Court erred when it did not structure its sentencing order to achieve the result of a single 24-month sentence. To achieve this objective, Montgomery maintains the Arizona U.S. District Court needed to structure its sentencing order to accommodate the Bureau of Prisons' "prospective only" implementation of concurrent sentences.
 
 
 53
 Montgomery relies on the Commentary to Sec. 5G1.3(b), Application Note 3, November 1991 ed., to support his position.
 
 
 54
 When a sentence is imposed pursuant to subsection (b), the court should adjust for any term of imprisonment already served as a result of the conduct taken into account in determining the instant sentence (e.g., if the appropriate total punishment determined under this subsection for all offenses is 30 months and the defendant has already served 10 months of the prior undischarged term of imprisonment, the court should impose a sentence of 20 months concurrent with the prior undischarged term.)
 
 
 55
 (Emphasis added.)
 
 
 56
 The Government concedes that Application Note 3 supports Montgomery's position that Sec. 5G3.1(b) requires the Arizona U.S. District Court to structure its sentence to achieve its sentencing objective.
 
 
 57
 Montgomery further relies on the Commentary to Sec. 5G3.1(b), Application Note 2, November 1993 ed., which provides an additional example of how a court should structure sentencing when it imposes a sentence under Sec. 5G3.1(b). Application Note 2 states in pertinent part:
 
 
 58
 [Suppose] the court determines that a sentence of 13 months provides the appropriate total punishment [for a course of conduct that occurred in more than one jurisdiction]. [Where] the defendant has already served six months on a related state charge, a sentence of seven months, imposed to run concurrently with the remainder of the defendant's state sentence, achieves this result. For clarity, the court should note on the Judgment in a Criminal Case Order that the sentence imposed is not a departure from the guidelines because the defendant has been credited for guideline purposes under Sec. 5G3.1(b) with six months served in state custody."
 
 
 59
 (Emphasis added.)
 
 
 60
 Thus, Montgomery maintains that the Arizona U.S. District Court's sentencing order should have credited Montgomery with the 16-months time already served on the 24-month Texas sentence and indicated that Montgomery serve only 8 months on the Arizona/Kentucky sentences concurrently with the remainder of his Texas sentence.
 
 
 61
 In contrast to agreeing with Montgomery at the sentencing hearing, the Government now contends that the 24-month concurrent sentences enunciated by the Arizona U.S. District Court were understood by the parties to run concurrently only with the time remaining on the Texas sentence. This assertion cannot be supported. Assuming this were true, Montgomery would have to serve 24 months in addition to the 16 months already served--thereby resulting in a 40-month sentence. The Government has already admitted that Montgomery's sentence cannot fall outside of his Sentencing Guidelines range.[6] Therefore, absent an upward departure, the parties could not have agreed that Montgomery would serve only 8 months of his Arizona/Kentucky sentences concurrently with his remaining Texas sentence.
 
 
 62
 Alternatively, the Government asserts that if Montgomery is dissatisfied with the Bureau of Prisons implementation of his Arizona/Kentucky 24-month concurrent sentences, Montgomery should resolve that dissatisfaction through whatever administrative remedies are available with the Bureau of Prisons. We reject this argument. It is not up to Montgomery to persuade the Bureau of Prisons how his sentence is to be served. Montgomery should serve the sentence he was actually given by the Arizona U.S. District Court in accordance with the Sentencing Guidelines.
 
 
 63
 On the record before us, we find that the Arizona U.S. District Court agreed that Montgomery's overall term of imprisonment on all of the Arizona, Kentucky, and Texas charges which represented a same course of conduct would be 24 month. Further, we find that pursuant to Sec. 5G1.3(b) of the Sentencing Guidelines, the Arizona United States District Court is required to structure Montgomery's sentence to achieve the objective of Montgomery serving no time in excess of his 24-month Texas sentence.[7]
 
 
 64
 REVERSED and REMANDED for resentencing.
 
 
 
 *
 Honorable Ronald S.W. Lew, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 After his federal conviction in Texas, but before his sentencing in Arizona, Montgomery was tried and convicted on unspecified state charges in Texas. The state conviction changed Montgomery's criminal history status under the Sentencing Guidelines. Thus, at the time of Montgomery's sentencing by the Arizona U.S. District Court on the federal charges in Arizona, Kentucky, and Texas, Montgomery's Sentencing Guidelines range was increased to 30 months from 24 months which had been the maximum at the time of Montgomery's sentencing by the Texas U.S. District Court
 
 
 [2]
 Prospective application of a concurrent sentence means that a second sentence which is to be served concurrently with an earlier sentence that has not been fully discharged can be served concurrently only with the time remaining to be served on the earlier sentence
 
 
 [3]
 To effect the relief that Montgomery requested, the District Court would have to sentence Montgomery to an 8-month sentence to run concurrently with the 8 months remaining on Montgomery's 24-month Texas sentence
 
 
 [4]
 Montgomery makes additional arguments that his waivers of appeal do not bar his present appeal. However, we need not address these arguments because we find that Montgomery's first argument is meritorious
 
 
 [5]
 The Sentencing Guidelines, November 1993 edition, state in pertinent part:
 If ... the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.
 
 
 [6]
 The Arizona U.S. District Court noted at Montgomery's sentencing hearing that it had to "impose a sentence within that guideline range [24-30 months] unless it makes specific findings on the record which would be the basis for ... an upward departure.... The Government concedes the Arizona U.S. District Court did not make such findings
 
 
 [7]
 Because we grant Montgomery complete relief based on the appeal of his Arizona/Kentucky sentences, we need not reach his Rule 35 appeal