61 F.3d 912
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mike Alfons CAMPA, Defendant-Appellant. (Two Cases)
 Nos. 94-50373, 94-50387.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 9, 1995.
Decided July 11, 1995.
 
 Before: FLETCHER, WIGGINS, FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Mike Alfons Campa appeals the district court's denial of his motion to withdraw his two guilty pleas on the grounds of ineffective assistance of counsel. He also appeals his sentence, arguing that the amount of intended loss used for sentencing purposes was excessive. This court has jurisdiction pursuant to 28 U.S.C. Sec. 1291 and 18 U.S.C. Sec. 3742. Because Campa's claims of ineffective assistance of counsel are without merit, and because Campa waived the right to appeal his sentence, we affirm.
 
 BACKGROUND
 
 3
 On July 8, 1993, defendant Mike Alfons Campa pled guilty to one count of mail fraud in violation of 18 U.S.C. Sec. 1341 (hereinafter "the 1993 plea" or "the first plea"). Campa owned and operated a company named International Marketing Concepts, which was engaged in extensive telemarketing fraud. Campa and his employees would inform elderly victims that they had won fictitious, expensive prizes and persuade the victims to send money in order to claim their winnings.
 
 
 4
 Before pleading guilty, Campa was advised of the maximum penalties under section 1341 and was informed that the amount of loss for the purpose of sentencing would be $334,473. The plea agreement provided that the court could order restitution up to that amount. Campa attended proffer sessions with the government and agreed to cooperate with the government's ongoing investigation of telemarketing fraud. After his guilty plea, Campa was released on bail. Sentencing was postponed four times to give Campa the opportunity to cooperate further.
 
 
 5
 While free on bail, Campa resumed his illegal activities. He was re-arrested on February 4, 1994. On March 17, 1994, he pled guilty to two counts of wire fraud in violation of 18 U.S.C. Sec. 1343 (hereinafter "the 1994 plea" or "the second plea"). In this second plea agreement, he stipulated that the total amount of loss to be used for sentencing purposes for this second fraud was approximately $150,000 and that the court could order restitution up to that amount. The government agreed to recommend that his first and second telemarketing fraud losses be grouped for the purposes of sentencing, so that the amounts of loss from both cases would be combined to arrive at the total amount of loss under section 2F1.1 of the Sentencing Guidelines. In the written plea agreement, Campa was advised of the maximum statutory penalties for each count; he acknowledged that no one could predict his final sentence; and he agreed to waive his right to appeal any sentence imposed by the court as long as the sentence was below the statutory maximum. The waiver of appeal provision expressly applied to both the 1993 and 1994 convictions, which were to be consolidated for sentencing. At the Fed. R. Crim. P. 11 hearing, the trial court carefully reviewed the terms of the agreement with Campa, reminding Campa of the maximum possible sentence and making sure he understood he was waiving his right to appeal any sentence below that maximum.
 
 
 6
 Before sentencing, Campa moved to withdraw both the 1993 and 1994 pleas on the grounds of ineffective assistance of counsel. The district court appointed new counsel for Campa and held an extensive hearing on his motion. The court ultimately found that there was "no basis whatsoever" for allowing Campa to withdraw either plea. The court then sentenced Campa to sixty months' incarceration with three years' supervised release and ordered Campa to pay $319,123 in restitution and a $150 fine. Campa appeals the denial of his motion to withdraw his pleas and also his ultimate sentence. This court reviews for abuse of discretion, see United States v. Castello, 724 F.2d 813, 815 (9th Cir. 1984), and we affirm.
 
 I. THE 1993 PLEA
 
 7
 Campa contends that his 1993 plea was not knowing, intelligent and voluntary because of four alleged inadequacies in his representation. He claims, first, that his attorney never advised him of either the strength of the government's case or any possible defenses. Second, he claims he was wrongly advised that if he were to plead guilty he would receive only probation and no jail time. Third, he was advised that he would be held responsible for the illegal telemarketing activities of his employees. Fourth, his attorney advised him to enter into the plea agreement before the attorney had received the entire packet of discovery from the government.
 
 
 8
 In order to attack a guilty plea as based on inadequate legal advice, the defendant must show that "counsel was not 'a reasonably competent attorney' and the advice was not 'within the range of competence demanded of attorneys in criminal cases."' Strickland v. Washington, 466 U.S. 668, 687 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). The defendant must also demonstrate prejudice stemming from the inadequate advice. Strickland, 466 U.S. at 687. None of Campa's claims of ineffective assistance of counsel meets this standard.
 
 
 9
 First, Campa argues that he was denied effective assistance of counsel because his attorney, Stephen Gigliotti, allegedly did not advise him of any weaknesses in the government's case or any possible defenses. Campa has not, however, demonstrated that the government's case had any weaknesses of which he should have been advised, or that any viable defense was available to him. In the absence of demonstrated prejudice, this claim furnishes no grounds for relief for ineffective assistance of counsel. Id.
 
 
 10
 Second, Campa claims Gigliotti advised him that if he pled guilty he would receive only probation and no jail time. The record belies this claim. At the plea hearing, the court advised Campa that he would probably be sentenced within the guideline range and that the guideline range was 18 to 24 months' imprisonment. Campa indicated to the court that he understood. That colloquy, which took place when there was still time for Campa to back out of his guilty plea, eviscerates Campa's claim that he would not have pled guilty if he had known he could receive jail time.
 
 
 11
 Third, Campa claims his plea was influenced by erroneous advice from Gigliotti that the law would hold Campa responsible for the illegal telemarketing activities of his employees. Campa claims he did not know about his employees' activities and so he could not be held responsible for them. He claims Gigliotti's advice to the contrary constituted ineffective assistance of counsel. Campa's claim of ignorance of his employees' activities is highly suspect in light of his admission to the contrary both to Gigliotti before signing the plea agreement and to the government shortly afterwards.[1] In any event, Gigliotti's prediction that the government would be able to prove knowledge and hold Campa responsible for his employees' frauds did not fall outside the range of reasonable competence, because, as the district court pointed out, the evidence against Campa created "a remarkably strong case. [The prosecutor] could have proven this case 10 ways to one, you choose it." We conclude that Gigliotti's advice on this score did not render Campa's plea uninformed.
 
 
 12
 Fourth, Campa contends that his plea was not fully informed because, at the time Gigliotti advised him to enter into the plea agreement, Gigliotti had not yet received the entire packet of discovery from the government. Campa argues that Gigliotti's advice to plead guilty before full discovery had been conducted constituted ineffective assistance of counsel.
 
 
 13
 We conclude that advising Campa to plead guilty at an early stage of the prosecution fell well within the range of reasonable competence. Although a fair assessment of attorney performance should be made without the distortion of hindsight, Strickland, 466 U.S. at 689, Gigliotti's advice appears sound even in retrospect. At the time of Campa's guilty plea, the case against him was already overwhelming, as both Gigliotti and Campa were aware. Time was of the essence for locking the government into a plea agreement: as the investigation continued and additional victims were identified, estimates of the amount of intended loss would only increase. By pleading guilty at an early stage, Campa locked in the figure $334,473 as the amount of loss to be used for sentencing purposes.[2] Furthermore, by admitting guilt early and attending proffer sessions with the government, Campa had the opportunity to cooperate with the government's ongoing investigation on the understanding that his cooperation would be taken into account in sentencing.
 
 
 14
 In comparison to the benefits of immediately accepting the plea agreement, the benefits of postponing the change of plea would have been slight. Even with the benefit of hindsight, Campa's briefs failed to identify a single line of defense that would have been bolstered by the materials yet to be received.
 
 
 15
 In light of the soundness of his attorney's advice, this claim of ineffective assistance, like the preceding three, is entirely without merit. The district court did not abuse its discretion in refusing to allow Campa to withdraw his 1993 guilty plea.
 
 II. THE 1994 PLEA
 
 16
 Campa also seeks to withdraw his second plea on the grounds of ineffective assistance of counsel. He claims Gigliotti had a conflict of interest stemming from his dual representation of Campa and another client, Greg Stead, whom Campa had referred to Gigliotti. Stead was and is the owner and president of Dollar Depot, a check-cashing business then under a separate criminal investigation in Las Vegas.
 
 
 17
 The conflict of interest issue arises only with respect to the 1994 plea. When Campa resumed his telemarketing activities after his first guilty plea, he modified his methods: this time, rather than depositing victims' checks through a bank, he used various check-cashing establishments, including Dollar Depot. Now, in seeking to be released from his 1994 plea, Campa claims Dollar Depot was a potential witness to his activities, and that Gigliotti's contemporaneous representation of Dollar Depot's owner constituted a conflict of interest that denied Campa effective assistance of counsel. The trial court conducted an extensive hearing on the conflict of interest claim and ultimately rejected it as a basis for withdrawing the guilty plea. We affirm.
 
 
 18
 Ineffective assistance of counsel claims require that the defendant show that counsel's performance was deficient and that the deficiency prejudiced the defense. Strickland, 466 U.S. at 687. Because the conflict of interest alleged by Campa was potential rather than actual, no prejudice is presumed. Id. at 692 (noting that, in conflict of interest situations, prejudice is presumed "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance"') (quoting Cuyler v. Sullivan, 446 U.S. 335, 350, 348 (1980)).
 
 
 19
 Campa has failed to show that he was prejudiced in any way by his attorney's representation of Stead. He has not described any activities about which Stead or other agents of Dollar Depot might have testified. Even if we assume, arguendo, that Gigliotti's representation of Dollar Depot would have affected the availability of Stead's testimony, Campa has not explained how the presence or absence of such testimony might have affected his defense. Campa also has not explained how the contemporaneous representation could have influenced Gigliotti's recommendation that he accept the plea agreement or how it affected Campa's decision to plead guilty. Any finding of prejudice, therefore, would be pure speculation.
 
 
 20
 Even if the case against Campa had gone to trial, the possibility that an actual conflict of interest would have developed was remote. When Gigliotti learned that Dollar Depot was mentioned in an affidavit supporting a search and arrest warrant for Campa,[3] Gigliotti acted with due diligence to determine whether he could continue to represent both clients. He immediately asked Mr. Davis, the Assistant United States Attorney in charge of Campa's case, about the involvement of Dollar Depot. Davis assured Gigliotti that Dollar Depot was not a target or subject in the investigation of Campa. Gigliotti then questioned Campa about the role of Dollar Depot. Campa told Gigliotti he was not aware of any evidence of wrongdoing on the part of Dollar Depot, and Campa said he had never bought or sold lead lists ("mooch" lists) from Stead. Gigliotti reasonably determined there was no conflict of interest.
 
 
 21
 In the absence of any showing of prejudice, the remote possibility that a conflict of interest could develop in the future furnishes Campa with no basis to withdraw his guilty plea on the grounds of ineffective assistance of counsel.
 
 III. THE SENTENCE
 
 22
 Campa argues that the amount of intended loss used in sentencing him under the guidelines was excessive for two reasons: it included amounts attributable to Campa's employees' wrongful acts, of which Campa claims to have had no knowledge, and it was based on speculation and conjecture because he claims the prosecution never introduced proof of the actual dollar amounts that Campa intended to obtain from the victims.
 
 
 23
 We do not have jurisdiction to reach the merits of Campa's argument because Campa waived his right to appeal his sentence as long as it was below the statutory maximum specified in the second plea agreement. The waiver explicitly governed both the 1993 and 1994 cases, which were consolidated for sentencing. The sentence imposed on Campa is, in fact, well below the statutory maximum of five years of incarceration, three years of supervised release, a $250,000 fine, and a special assessment of $50, for each count of mail or wire fraud.
 
 
 24
 An express waiver of the right to appeal in a negotiated guilty plea is valid if knowingly and voluntarily made. See United States v. Catherine, No. 94-10517, slip op. 5905, 5908 (9th Cir. May 31, 1995); United States v. Bolinger, 940 F.2d 478, 480 (9th Cir. 1991). Campa asserts that the waiver is invalid because it was not made knowingly, intelligently, or voluntarily, but he offers absolutely no factual support for this claim. After reviewing the plea agreement and the transcript of the hearing on Campa's change of plea,[4] we find this claim entirely without merit.
 
 
 25
 Before accepting Campa's change of plea, the district court took special pains to ensure that Campa understood the terms of the agreement. Campa acknowledged that he understood he was waiving his right to appeal any sentence below the statutory maximum. The court explained that there was no guarantee that the court would sentence Campa within the sentencing guidelines. Campa was informed of the potential for consecutive sentences, and that the maximum sentence for each count would be five years of incarceration, three years of supervised release, and fines. The amount of loss from the second set of telemarketing activities was estimated at $154,350. The court asked the prosecutor to estimate the defendant's probable sentence based on the prosecution's sentencing recommendation. The prosecutor estimated 51 to 63 months' incarceration.[5]
 
 
 26
 Campa should not have been at all surprised by his ultimate sentence of sixty months' incarceration, three years' supervised release, $319,123 in restitution,[6] and a $150 fine. We see no grounds for invalidating Campa's waiver of his right to appeal his sentence. Accordingly, the sentence will stand.
 
 
 27
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Gigliotti's declaration states that Campa had admitted to him that Campa knew the sales staff at his company was making misrepresentations to elderly victims over the telephone. Campa admitted the same facts to AUSA Davis and Postal Inspector Ward during debriefing sessions after his plea. Campa later testified to the district court that he had no knowledge of his employees' activities. The court, however, found Campa a thoroughly incredible witness
 
 
 [2]
 This could potentially have been a great benefit to Campa. At the time of the plea, it was unclear how much in additional losses the government would uncover. If the amount of loss used for sentencing purposes had risen above $350,000, Campa's offense level under the guidelines would have one level higher. See U.S.S.G. Sec. 2F1.1(b)(1). By the time of the pre-sentence report, investigators had in fact discovered an additional $13,000 in losses attributable to Campa's pre-plea activities. Because of the plea agreement, the additional losses were not considered in sentencing
 
 
 [3]
 The affidavit stated: "Mike Campa is currently running an illegal boilerroom operation and using check cashing businesses in order to deposit victims' checks.... One check cashing business, Dollar Depot, is on Beach and Ball Streets in Anaheim, California. Campa and the owner of the check cashing business are friends."
 
 
 [4]
 We review de novo the validity of a waiver of the statutory right to appeal. See Catherine, slip op. at 5908
 
 
 [5]
 This assumed that the offenses pled to in 1993 and 1994 would be grouped together for sentencing purposes, an approach advocated by defense counsel because it would result in a lower sentence than if the offenses were considered separate
 
 
 [6]
 The two plea agreements provided that the amount of loss used for sentencing purposes would be $334,473 and approximately $150,000, respectively. The agreements stated explicitly that the court could order restitution up to that amount. The second plea agreement provided that the two amounts would be combined for purposes of sentencing