**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JAMES DOUGLAS ROSS,
*Defendant-Appellant.*

No. 06-30204

D.C. No.
CR-05-207-WFN

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
William Fremming Nielsen, District Judge, Presiding

Argued and Submitted
November 14, 2006—Seattle, Washington

Filed February 8, 2007

Before: Pamela Ann Rymer, Marsha S. Berzon, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Rymer

**COUNSEL**

Kathleen Moran, Federal Defenders of Eastern Washington & Idaho, Spokane, Washington, for the defendant-appellant.

George J.C. Jacobs, III, Assistant United States Attorney, Spokane, Washington, for the plaintiff-appellee.

**OPINION**

RYMER, Circuit Judge:

James Douglas Ross appeals a supervised release condition imposed following his conviction for violating 18 U.S.C.

§ 924(a)(1)(A), making a false statement or representation regarding the acquisition of a firearm. We affirm.

I

Ross was administratively separated from the United States Army by summary court-martial when he was caught trying to mail a submachine gun from Iraq to his father's home in Spokane, Washington. Military Police found a cache of white supremacist paraphernalia and several weapons hidden behind ceiling tiles in Ross's military quarters. After his discharge, a Spokane County Sheriff's Office deputy saw Ross passing out flyers produced by The National Alliance, a neo-Nazi/white supremacist organization that advocates race hatred, anti-Semitism, and the overthrow of the United States government. The National Alliance also owns a company that distributes "white power" music CDs and a video game called "Ethnic Cleansing." Ross visited a website which functions as an online community for white supremacists and has a chatroom where he had discussions about weapons, one of which Ross eventually bought for a confidential informant knowing that the informant was a convicted felon who could not lawfully possess a firearm. This transaction led to the charge of making a false statement regarding the acquisition of a firearm on which Ross entered a guilty plea. Based on the paraphernalia uncovered during the military investigation, Ross's distribution of National Alliance literature, and his use of the white supremacist website, the Presentence Report recommended a special condition of supervised release that Ross refrain from associating with known neo-Nazi/white supremacist members and affiliates and from possessing neo-Nazi/white supremacist paraphernalia.

Ross agreed that he handed out National Alliance flyers, but maintained that he was not a member and had no contact with members. His counsel argued against the special condition, but acknowledged that being involved in white supremacist groups can lead to criminal activity and that Ross was

"somewhat impressionable." Noting the seriousness of the offense and Ross's apparent white supremacy philosophy, the district court was of the view that release should be conditioned on Ross's not being involved in organizations such as the National Alliance and Aryan Nations and other white supremacy groups. Accordingly, it imposed as a condition:

> You shall not associate with known neo-Nazi/white supremacist members, known neo-Nazi/white supremacist affiliates, or any other organization that advocates engaging in criminal activity or overthrowing the United States government. In addition, you shall not possess neo-Nazi/white supremacist paraphernalia.

Ross appeals.

## II

[1] A district court may impose discretionary conditions of supervised release listed in 18 U.S.C. § 3563(b), as well as "any other condition it considers to be appropriate." *Id.* § 3583(d). The discretion is broad, but special conditions must be "reasonably related" to the goals of deterrence, protection of the public, and rehabilitation of the offender. *See id.* §§ 3583(d)(1), 3553(a). And conditions cannot involve any "greater deprivation of liberty than is reasonably necessary for the purposes" of supervised release. *Id.* § 3583(d)(2); *United States v. T.M.*, 330 F.3d 1235, 1240 (9th Cir. 2003).

[2] Ross faults the court's findings as inadequate in relation to the factors listed in § 3553(a) and given the liberty interest implicated by the condition. For this he relies on *United States v. Williams*, 356 F.3d 1045 (9th Cir. 2004). *Williams*, however, presented quite a different situation. There, the condition required administration of antipsychotic medication; as the Supreme Court and we have recognized, freedom from unwanted drugs undoubtedly is a significant liberty interest.

*Id.* at 1053. So, before imposing such a serious infringement of liberty, we held that a district judge should conduct a thorough consideration of the § 3553(a) factors and articulate a justification. *Id.* at 1055-56. Here, however, the infringement of liberty is far more modest. We have frequently permitted restrictions on supervised release that infringe on fundamental rights, including First Amendment rights. *See, e.g., United States v. Rearden*, 349 F.3d 608, 619-21 (9th Cir. 2003) (upholding restrictions on possessing or using computer with Internet access and possessing material depicting sexually explicit conduct); *United States v. Bee*, 162 F.3d 1232, 1234 (9th Cir. 1998) (upholding restrictions on contact with children and possession of sexually stimulating material); *United States v. Bolinger*, 940 F.2d 478, 480-81 (9th Cir. 1991) (upholding condition prohibiting participation in activities or membership of motorcycle clubs); *Malone v. United States*, 502 F.2d 554, 555-57 (9th Cir. 1974) (upholding restrictions on participating in any American Irish Republican movement, from belonging to any Irish organization, and from visiting Irish pubs). The liberty interest at stake in associating with neo-Nazi/white supremacist groups and possessing related material is no more weighty than participating in motorcycle clubs or accessing the Internet. We have no difficulty understanding from the record why the district judge believed that the interests of rehabilitation and public safety would be served by separating Ross from neo-Nazi/white supremacist influences.

**[3]** Special conditions "may seek to prevent reversion into a former crime-inducing lifestyle by barring contact with old haunts and associates, even though the activities may be legal." *Bolinger*, 940 F.2d at 480 (citing *Malone*, 502 F.2d at 556-57). Restricting Ross from associating with known neo-Nazi/white supremacist members or affiliates is just such a condition. It advances the purposes of supervised release like the condition prohibiting a defendant convicted of exporting firearms to the United Kingdom from associating with the Irish Republican movement in *Malone*, and prohibiting a

defendant convicted of being a felon in possession of a firearm from being involved in any motorcycle club activities in *Bolinger*. The Seventh Circuit reached a similar conclusion in *United States v. Showalter*, 933 F.2d 573 (7th Cir. 1991), where the defendant was also involved with a white supremacist "skinhead" and "neo-Nazi" group and had been restricted from participating in, or associating with, those who do participate in a skinhead or neo-Nazi organization. *Id.* at 574. As the court explained, Showalter needed to be separated from other members of white supremacist groups "to have a chance of staying out of trouble." *Id*. at 575-76. The same appears for Ross.

**[4]** Ross further maintains that prohibiting him from possession of "neo-Nazi/white supremacist paraphernalia" is broader than reasonably necessary because it includes legal materials such as books, flags, and clothing, and that the condition is unconstitutionally vague. As we have explained, the condition is not too broad in relation to the goals of supervised release. We are unpersuaded that the restrictions lack meaning to Ross or that they unnecessarily trammel on First Amendment rights. Given his familiarity with Neo-Nazi organizations and materials, Ross will understand that the term "neo-Nazi/white supremacist paraphernalia" refers to the objects that members of such groups tend to possess, for example, uniforms, flags, pictures, memorabilia, or other symbols of white supremacy with images such as a swastika, references to "Heil Hitler," raised fists, "SS," and the like. *See United States v. Allen*, 341 F.3d 870, 874, 885-86 (9th Cir. 2003) (describing evidence of neo-Nazi supremacist paraphernalia introduced in the trial of skinheads). Thus, he is on notice that the condition bars him from possessing a neo-Nazi uniform (combat boots, arm bands with swastikas, t-shirts with symbols), or neo-Nazi and white supremacist hate music and racist, Nazi-related propaganda containing "overt messages of racial hatred." *See Monteiro v. Temple Union High School Dist.*, 158 F.3d 1022, 1035 (9th Cir. 1998) (Boochever, J., concurring). The restriction on association is lim-

ited to *known* neo-Nazi white supremacist members. Construed in this way, the condition is neither too broad nor too uncertain. Should any difficulty arise on the margin, Ross can always seek clarification from the court.

**[5]** We conclude that the condition as imposed and as construed is reasonably related to Ross's rehabilitation and to protection of the public. Accordingly, we affirm.

AFFIRMED.