# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.

DEAN HARLON SOLTERO, a/k/a DEAN
HARLON RESINGER, DEAN HARLON
SOCTERO, DEAN HARLOW SOCTERO,
DEAN HARLOW SOLTERO and
"HUERO,"
           *Defendant-Appellant.*

No. 06-50257

D.C. No.
CR-04-00235-AHS

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Alicemarie H. Stotler, District Judge, Presiding

Argued and Submitted
February 7, 2007—Pasadena, California

Filed October 19, 2007
Amended December 12, 2007

Before: Thomas G. Nelson, Eugene E. Siler, Jr.,* and
Michael Daly Hawkins, Circuit Judges.

Per Curiam Opinion;
Partial Concurrence and Partial Dissent by Judge Hawkins

---

*The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge
for the Sixth Circuit, sitting by designation.

16309

**COUNSEL**

Sean K. Kennedy, Acting Federal Public Defender, Jonathan D. Libby, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Debra Wong Yang, United States Attorney, Wayne R. Gross, Assistant United States Attorney, David R. Gallivan, Special Assistant United States Attorney, Santa Ana, California, for the plaintiff-appellee.

**ORDER**

The Per Curiam Opinion filed on October 19, 2007, slip op. 14099, and appearing at 2007 WL 3037348 (October 19, 2007), is amended as follows:

At slip op. 14109, the following is deleted (first paragraph and footnote 8):

> We agree. While it is possible that "Soltero" is the defendant's "true legal name" (as the government contends),[8] we see no reason for the supervised release condition to remain ambiguous when it could

be so easily clarified. The government does not object to defendant's use of the surname "Soltero" during his period of supervised release, and thus we remand to the district court for it to revise the name condition so as to require Soltero to use the last name "Soltero," rather than his ambiguous "true legal name."

8/ As the government noted at sentencing, "Soltero" is the name reflected in the defendant's criminal history records, Social Security documentation, and marriage license.

The following replaces the deleted text:

We disagree. While it is possible that "Soltero" is the name that defendant uses, he was born "Resinger," which has apparently never been changed legally. No authority vests with the federal courts to grant a name change. If the defendant wishes to legally change his name under California law, he must follow the procedures allowed under state law. The district court did not err by imposing the second condition of supervised release.

There are no changes to Judge Hawkins's Partial Concurrence and Partial Dissent in light of this amendment.

With this amendment, a majority of the panel has voted to deny the petition for rehearing. Judge Hawkins has voted to grant the petition for rehearing. Judges Nelson and Siler have recommended denying the petition for rehearing en banc. Judge Hawkins has voted to deny the en banc petition.

The petition for rehearing and petition for rehearing en banc are DENIED.

No further petitions for rehearing or rehearing en banc may be filed.

## OPINION

PER CURIAM:

Dean Harlon Soltero ("Soltero") appeals the sentence imposed following his guilty plea to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He argues that the district court erred by failing to verify that he had read his presentence report ("PSR") and had discussed it with his attorney, as well as by imposing three particular conditions of supervised release. We affirm in part, and vacate and remand in part.

### I.

Soltero[1] pleaded guilty to a single-count indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). At sentencing, both Soltero and his counsel were given an opportunity to address the court on the matter of sentencing. Although the court did not expressly ask Soltero whether he had read the PSR and discussed it with counsel, Soltero had been advised at a previous hearing that he would have this opportunity and never indicated to the sentencing court that the opportunity had been denied him. Moreover, Soltero's counsel raised—and the district court considered—several objections to facts contained in the PSR, with counsel using the word "we" to frame the defense's objections.

After ruling on these objections, the court sentenced Soltero to 72 months imprisonment, followed by three years of supervised release. During his term of supervised release, the court ordered Soltero to (among other things): (1) "As directed by the Probation Officer, . . . pay all or part of the

---

[1]Soltero explained to the court during the change of plea hearing that his legal birth name is Dean Harlon Resinger, although he has used his stepfather's surname, Soltero, since age two. *See infra* Part II.C.

costs of treating [his] drug dependency and/or alcohol dependency"; (2) use only his "true legal name"; and (3) refrain from "associating with any known member of any criminal street gang or disruptive group . . . , specifically, any known member of the Delhi street gang."**²** The district court overruled Soltero's objections to these conditions. Soltero now appeals, arguing that the district court's failure to verify that he had read the PSR and discussed it with his attorney requires resentencing and that the three conditions of supervised release are improper.

## II.

## A.   District Court's Compliance with Rule 32(i)(1)(A)

[1] Rule 32(i)(1)(A) requires a district court to "verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report."**³** Fed. R. Crim. P. 32(i)(1)(A). This rule's purpose is, as Soltero correctly points out, "to ensure that the defendant [has] the opportunity to read the report and then clarify or dispute personal information contained" therein. *See id.*, advisory committee's notes (1983) ("[T]he failure to disclose the report to the defendant, or to require counsel to review the report with the defendant, significantly reduces the likelihood that false statements will be discovered, as much of the content of the [PSR] will ordinarily be outside the knowledge of counsel."). Soltero argues that the district court violated this rule by failing to expressly verify that he had read the PSR and discussed it with his attorney.

[2] A district court need not specifically inquire whether a defendant has read the presentence report, *United States v. Lewis*, 880 F.2d 243, 245 (9th Cir. 1989); however, for Rule

---

²The condition continued as reproduced *infra* Part II.D.

³Prior to December 1, 2002, the verification requirement was referenced in Rule 32(c)(3)(A) and, before December 1, 1994, in Rule 32(a)(1)(A).

32(a)(1)(A) to be satisfied, the sentencing judge must "reasonably rel[y] on evidence indicating that a defendant has read the presentence report and discussed it with counsel," *id.* at 246. Here, no such direct evidence exists. Although Soltero was informed of the PSR's existence when the district judge alluded to it at his change of plea hearing, merely informing a defendant that a PSR *would be* prepared and that he *would* have a chance to read and discuss it with his attorney does not prove that these events actually took place. *United States v. Esparza-Gonzales*, 268 F.3d 272, 274 (5th Cir. 2001).

**[3]** Additionally, although Soltero's attorney objected to portions of the PSR (and at least some of these objections were likely based on discussions with Soltero), counsel's objections do not confirm that Soltero read the entire PSR and had a chance to point out any factual errors. *United States v. Osborne*, 291 F.3d 908, 910 (6th Cir. 2002); *United States v. Lockhart*, 58 F.3d 86, 88-89 (4th Cir. 1995). Finally, while Soltero's attorney repeatedly used the word "we" when discussing the defense's PSR objections (which might imply that he spoke for both him *and* Soltero), we have already held that use of the word "we" by defense counsel proves nothing, as "we" is a "common stylistic device used by lawyers." *United States v. Sustaita*, 1 F.3d 950, 953 (9th Cir. 1993). Because the district court neither directly asked Soltero if he had read the PSR and discussed it with his attorney nor relied on evidence indicating the same, we hold that the court's inquiry was inadequate under Rule 32(i)(1)(A).

Soltero believes our inquiry should end there and that we should automatically remand his case for resentencing because, "[g]iven the court's failure to comply with Rule 32, we have no assurance that the PSR was accurate." While we acknowledge that some circuits have adopted this approach, *see, e.g.*, *Osborne*, 291 F.3d at 910-11, this circuit has consistently held that,"if it is clear that no prejudice resulted" from a court's failure to comply with the letter of Rule 32(i)(1)(A), the error is harmless, and resentencing is unnecessary. *United*

*States v. Davila-Escovedo*, 36 F.3d 840, 844 (9th Cir. 1994); *Sustaita*, 1 F.3d at 954. Although we emphasize that this error can be, and should be, "easily avoided," *Sustaita*, 1 F.3d at 954, we still agree—as do several other circuits[4] —that a harmless error analysis is appropriate in this context.

**[4]** Here, just as in *Davila-Escoveda*, Soltero has "made no affirmative allegation that he failed to read the report" and review it with his attorney. 36 F.3d at 844. Equally important, Soltero has never identified—either to the district court or to this court—*any* fact in the PSR he would have disputed had the sentencing judge afforded him the opportunity. *Cf. Sustaita*, 1 F.3d at 954. We thus do not see how a failure to verify that Soltero read the PSR and discussed it with counsel resulted in any prejudice to Soltero. Accordingly, the district court's Rule 32(a)(1)(A) error was harmless.

## B. The Treatment Condition

Soltero's next contention is that the following condition impermissibly delegates to the probation officer the court's exclusive authority under 18 U.S.C. § 3672:

> As directed by the Probation Officer, the defendant shall pay all or part of the costs of treating the defendant's drug dependency and/or alcohol dependency to the aftercare contractor during the period of community supervision, pursuant to 18 U.S.C. § 3672. Defendant shall provide payment and proof of payment as directed by the Probation Officer. [Condition 6]

He argues that, pursuant to 18 U.S.C. § 3672, only courts are

---

[4]*See United States v. Stevens*, 223 F.3d 239, 242-46 (3d Cir. 2000); *Lockhart*, 58 F.3d at 89; *United States v. Rangel-Arreola*, 991 F.2d 1519, 1526 (10th Cir. 1993)*; United States v. Rodriguez-Luna*, 937 F.2d 1208, 1213 (7th Cir. 1991).

allowed to make determinations as to a defendant's ability to make such payments and whether such payments should be made. We review this claim for an abuse of discretion. *United States v. Williams*, 356 F.3d 1045, 1052 (9th Cir. 2004).

**[5]** We addressed this precise issue in *United States v. Dupas*, 419 F.3d 916, 924 (9th Cir. 2005).[5] In *Dupas*, we held that the district court did not plainly err by delegating to a probation officer the authority to determine whether the defendant has sufficient funds to pay for treatment and whether to require such payment. *Id.* (following the Fifth Circuit's decision in *United States v. Warden*, 291 F.3d 363, 365-66 (5th Cir. 2002)). In approving the delegation in that case, we noted:

> [T]he context of the provision in § 3672 is quite different from the context found in §§ 3572 and 3664. The later provisions relate generally to the court's imposition of sentences and restitution. Section 3672, by contrast, is directed primarily to the functions of the probation office. Moreover, the need to interpret the statute strictly so as to reserve core judicial functions to the court is weaker here; the condition at issue does not delegate to the probation officer the power to order substance abuse treatment in the first place. Finally, § 3672 requires the court only to find generally that funds are available to pay for an offender's treatment and, if so, allows the court to direct that such funds be paid. By contrast § 3572(d) and § 3664(f) expressly require the court to establish or specify the precise payment schedule.

*Id.* at 924 (citations omitted). Based on *Dupas*, the district

---

[5]We recognize that we reviewed the delegation in *Dupas* for plain error. Although we employ an abuse of discretion standard in this case, *Dupas*'s logic is nonetheless applicable.

court did not abuse its discretion in delegating the cost determination to the probation office.[6]

Soltero also argues that the payment conditions should be vacated because he has no ability to contribute to the costs of the substance abuse treatment. He asserts that because the court found that he did not have the ability to pay a fine, the court also must find that he does not have the ability to pay the costs of court-ordered treatment. This argument is without merit. The district court's two rulings are harmonious since any payment toward Soltero's treatment will be based upon his ability to pay. *See United States v. Bull*, 214 F.3d 1275, 1279 (11th Cir. 2000).

## C. The Legal Name Condition

The second condition Soltero disputes reads as follows:

> The defendant shall not obtain or possess any driver's license, Social Security number, birth certificate, passport or any other form of identification in any name, other than the defendant's true legal name, without the prior written approval of the Probation Officer; nor shall the defendant use, for any purpose or in any manner, any name other than his true legal name.

At sentencing, Soltero explained that his true legal surname may technically be "Resinger,"[7] but that he wanted to con-

---

[6]Although the dissent asserts that assigning the cost determination to the probation office was an unconstitutional delegation of the authority of the court, the punishment is still within the hands of the court at the time of the hearing on violations of the conditions of supervised release. The probation office does not have the power to punish Soltero; it only has the power to direct Soltero to pay for his treatment, if he is able.

[7]This is because Soltero was born "Dean Harlon Resinger" and, although his mother remarried a man with the surname "Soltero" when he

tinue using the surname "Soltero," just as he had been doing since he was two years old. Nevertheless, the district court imposed the generic condition reproduced above. Soltero argues that, because the condition could be read to unjustifiably require him to use a surname he had never used, imposing it was an abuse of the district court's discretion. *Williams*, 356 F.3d at 1052.

**[6]** We disagree. While it is possible that "Soltero" is the name that defendant uses, he was born "Resinger," which has apparently never been changed legally. No authority vests with the federal courts to grant a name change. If the defendant wishes to legally change his name under California law, he must follow the procedures allowed under state law. The district court did not err by imposing the second condition of supervised release.

## D.   Conditions Relating to Gang Association

The final set of conditions Soltero disputes reads as follows:

*Condition 8*:

> The defendant shall not associate with any known member of any criminal street gang or disruptive group as directed by the Probation Officer, specifically, any known member of the Delhi street gang;

*Condition 9*:

---

was two years old (at which time Soltero adopted this surname and proceeded to use it from that point forward), Soltero's stepfather never formally adopted him, and Soltero never officially changed his legal name. *See* Black's Legal Dictionary (8th ed. 2004) (defining "legal name" as the name "usu[ally] acquired at birth or through a court order.").

The defendant shall not be present in any area known as a criminal street gang gathering of the Delhi, as directed by the Probation Officer;

*Condition 10*:

The defendant shall not wear, display, use or possess any insignia, emblem, button, badge, cap, hat, scarf, bandana, jewelry, paraphernalia, or any article of clothing which may connote affiliation with, or membership in the Delhi gang.

The district court justified its imposition of these conditions by stating that "defendant is a Delhi gang member and is presumably familiar with the relevant insignia, commonly known gathering places, and pertinent members" of this gang.

Soltero nonetheless argues that the terms "associate," "any criminal street gang," "disruptive group," "any area known as a criminal street gang gathering of the Delhi," and "items that connote affiliation with, or membership in the Delhi gang" are impermissibly vague. *United States v. Hugs*, 384 F.3d 762, 768 (9th Cir. 2004) ("A [condition of supervised release] 'violates due process of law if it either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " (quoting *United States v. Loy*, 237 F.3d 251, 262 (3d Cir. 2001)). He also argues that the conditions are overbroad because casual contact with others—including contacts protected by the First Amendment—could render him in violation of these conditions.

[7] While a district court's discretion to set conditions of supervised release is broad even when those conditions affect fundamental rights, *United States v. Bee*, 162 F.3d 1232, 1234 (9th Cir. 1998), restrictions infringing upon fundamental rights are "reviewed carefully," *United States v. Terrigno*, 838 F.2d 371, 374 (9th Cir. 1988). A restriction on a defendant's

right to free association is nonetheless valid if it: (1) "is reasonably related to" the goals of deterrence, protection of the public, and/or defendant rehabilitation; (2) "involves no greater deprivation of liberty than is reasonably necessary" to achieve these goals; and (3) "is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)." 18 U.S.C. § 3583(d); *United States v. Sales*, 476 F.3d 732, 735 (9th Cir. 2007).

Here, the conditions imposed upon Soltero were, in all but one respect, within the district court's discretion to impose. Conditions 9 and 10 are not impermissibly vague because they specifically reference the "Delhi gang," and the district court is entitled to presume that Soltero—who has admitted to being a member of this gang—is familiar with the Delhi gang's members, its places of gathering, and its paraphernalia. *Hugs*, 384 F.3d at 768; *see also United States v. Ross*, 476 F.3d 719, 722-23 (9th Cir. 2007) (upholding supervised release condition requiring defendant to refrain from associating with known neo-Nazi/white supremacist groups); *United States v. Schiff*, 876 F.2d 272, 276 (2d Cir. 1989) (condition forbidding parolee from "associat[ing] with any group that advocates non-compliance with the tax laws" not vague or overbroad). Moreover, the conditions meet the criteria set forth in 18 U.S.C. § 3583(d). *See Ross*, 476 F.3d at 721-22; *United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir. 1991) ("Probation conditions may seek to prevent reversion into a former crime-inducing lifestyle by barring contact with old haunts and associates, even though the activities may be legal.").

The portion of Condition 8 forbidding Soltero from "associat[ing]" with "any known member of any criminal street gang . . . , specifically, any known member of the Delhi street gang," is also permissible. As explained above, the term "Delhi street gang" is sufficiently clear, as is the slightly more ambiguous—but not unconstitutionally so—term "criminal

street gang."[8] The term "associate" is also not, as Soltero argues, impermissibly vague. The Supreme Court has held that "incidental contacts"—such as those Soltero fears he would be punished for inadvertently engaging in—do not constitute "association," *Arciniega v. Freeman*, 404 U.S. 4, 5 (1971), and we hold that, with this limitation, "men of common intelligence" need not guess at the meaning of "association" in the context of Condition 8.[9] Once again, that portion of this condition meets the criteria set forth in 18 U.S.C. § 3583(d). *See Bolinger*, 940 F.2d at 480.

[8] Condition 8 crosses the line, however, in prohibiting Soltero from associating with "any known member of any . . . disruptive group." As Soltero points out, the term "disruptive group" has a broad meaning and could reasonably be interpreted to include not only a criminal gang, but also a labor union on strike, a throng of political protesters, or a group of sports fans celebrating after their team's championship victory. It is not immediately apparent to us—and the government makes no effort to explain—how prohibiting Soltero from associating with the latter three "disruptive groups" is "reasonably related" to a permissible goal of supervised release, such as protection of the public or Soltero's own rehabilitation. *See* 18 U.S.C. § 3583(d); *Sales*, 476 F.3d at

---

[8]Although it is not crucial to our finding that the meaning of "criminal street gang" would be apparent to the average person, we note that 18 U.S.C. § 521(a) defines "criminal street gang" as "an ongoing group, club, organization, or association of 5 or more persons . . . that has as [one] of its primary purposes the commission of [one] or more of the criminal offenses described in [18 U.S.C. § 521(c) and] . . . the members of which engage, or have engaged within the past 5 years, in a continuing series of offenses described in [§ 521(c)]."

[9]We note that Soltero only violates the condition if the gang member he associates with is *known to him* to be a gang member, thus undermining his argument that he is "expected to know of every gang currently operating on the streets . . . as well as gangs operating after his release from prison . . . ." *See Ross*, 476 F.3d at 722-23; *see also United States v. Johnson*, 446 F.3d 272, 281 (2d Cir. 2006) ("Generally, supervised release provisions are read to exclude inadvertent violations.").

735. Accordingly, the substantial encroachment upon Soltero's First Amendment rights created by the portion of Condition 8 prohibiting him from associating with "any known member of . . . any disruptive group" is without sufficient justification and must be stricken. *See Terrigno*, 838 F.2d at 374 ("The mere fact that a condition restricts a probationer's freedom to perform otherwise lawful activities is not dispositive of the reasonableness of the condition. But if conditions are drawn so broadly that they unnecessarily restrict otherwise lawful activities they are impermissible." (internal citations omitted)).[10] We thus remand to the district court for it to excise this portion of Condition 8 from Soltero's set of supervised release conditions.

**AFFIRMED** in part and **REMANDED** in part.

---

[10]The government argues that, read in context, it is clear that the term "disruptive group" was intended to cover only those disruptive groups that are also "gangs." However, even if Soltero would only be prosecuted for a supervised release violation if he associated with disruptive *gangs* (and not if he associated with other arguably "disruptive *groups*")—which, if true, would make the condition redundant and, thus, unnecessary for the government's stated purposes—there is no way for Soltero to know this from the condition's plain language.

A probationer must be put on clear notice of what conduct will (and will not) constitute a supervised release violation, a rule that is of particular importance when the condition seems to reach constitutionally protected conduct. *See United States v. Chapel*, 428 F.2d 472, 473-74 (9th Cir. 1970). An overly broad condition like this one cannot be "saved" merely because the government promises to enforce it in a narrow manner. *See United States v. Loy*, 237 F.3d 251, 266 (3d Cir. 2001) (A vague supervised release condition "cannot be cured by allowing the probation officer an unfettered power of interpretation, as this would create one of the very problems against which the vagueness doctrine is meant to protect, *i.e.*, the delegation of 'basic policy matters to policemen . . . for resolution on an ad hoc and subjective basis.' "); *cf. Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) ("[W]here a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." (internal quotation marks, alterations, citations, and footnotes omitted)).

HAWKINS, Circuit Judge, concurring in part and dissenting in part:

I concur in all of the majority Opinion save that concerning the treatment condition (Section II.B), which, in my view, constitutes an impermissible delegation to the probation office. As I read 18 U.S.C. § 3672, only *courts* are permitted to decide whether, and to what extent, a defendant is required to pay for drug treatment costs.

Although we considered a nearly identical supervised release condition in *United States v. Dupas*, 419 F.3d 916 (9th Cir. 2005), we did so under the plain error standard of review because, unlike Soltero, Dupas failed to make a timely objection to imposition of the condition. *Dupas* thus left open the question whether imposing this condition constituted legal error. *See id.* at 924 (concluding that *if* it was error to impose the condition, that error was not plain). We are now asked to answer the question left open in *Dupas*: May a district court— consistent with Article III's prohibition against delegating sentencing decisions to probation offices, *see United States v. Stephens*, 424 F.3d 876, 880-81 (9th Cir. 2005)—allow the probation office to decide whether a defendant will be required to pay all or part of the costs of treating his or her substance dependency?

As a general rule, although a sentencing court must determine "*whether* a defendant must abide by a condition, and *how* . . . a defendant will be subjected to the condition," the court may "delegate to the probation officer the details of where and when the condition will be satisfied." *Stephens*, 424 F.3d at 880. Under our Constitution, the power to punish is exclusively judicial, *see Ex parte United States*, 242 U.S. 27, 41-42 (1916), and thus the important limitation on a district court's discretion is that it may not delegate to the probation office the job of "decid[ing] the nature or extent of the punishment imposed upon a probationer," *United States v. Pruden*, 398 F.3d 241, 250 (3d Cir. 2005).

In *United States v. Warden*, 291 F.3d 363 (5th Cir. 2002), the Fifth Circuit considered a remarkably similar (though not identical) supervised release condition, which stated: "The defendant will incur the costs associated with [several counseling and treatment] programs, based on ability to pay as determined by the probation officer." *Id.* at 364. The court in *Warden* upheld the condition, explaining that, per the condition's plain language, "the probation officer [was] given *only* the responsibility to make a determination as to [the defendant's] ability to pay, a factfinding determination commonly made by probation officers in other contexts." *Id.* at 366 (emphasis added). The Fifth Circuit thus implicitly drew a distinction between the sentencing decision itself, which was made by the *court* when it ordered Warden to pay all the costs associated with his treatment, *see id.* at 364 ("The defendant *will incur* the costs . . . ." (emphasis added)), and the execution of that sentence, which was left to the probation office based on its assessment (and perhaps its periodic reassessment) of the defendant's financial situation.

The distinction drawn by the Fifth Circuit makes good sense. As a practical matter, probation offices are already charged with making ability to pay determinations in other contexts,[1] and are almost always in possession of the information needed to make these determinations accurately and expediently. *See* United States Sentencing Guidelines Manual § 5D1.3(c)(15) (2000) (standard supervised release condition requires defendants to "notify the probation office[ ] of any material change[s] in the [their] economic circumstances that might affect [their] ability to pay any unpaid amount of resti-

---

[1] *See, e.g.*, 18 U.S.C. § 3664 (requiring probation office to include, in every PSR it prepares for crimes described in 18 U.S.C. § 3663A(c), "information sufficient for the court to exercise its discretion in fashioning a restitution order," including "information relating to the economic circumstances of each defendant"—i.e., its calculation of the defendant's ability to pay); *United States v. Rearden*, 349 F.3d 608, (9th Cir. 2003) (discussing probation office's role in ascertaining a defendant's ability to pay a fine).

tution, fines, or special assessments"). I agree there is no sound reason to burden district courts with such matters when the purely administrative task of determining an individual's ability to pay can be left in the capable hands of institutions that regularly make such determinations.

I also agree that the condition upheld in *Warden* comports with the Article III requirement that the court, not the probation office, "impose the [defendant's] punishment," *Ex parte United States*, 242 U.S. at 41-42, as well as the 18 U.S.C. § 3672 requirement that the "court[, not the probation office,] . . . direct the payment of [treatment costs]," if any. The *Warden* court made it clear that part of the defendant's punishment was to pay for all of his own rehabilitative treatment costs—a requirement the defendant was ordered to fulfill unless the probation office later determined he was financially unable to do so. The *Warden* court could have directed the defendant to pay none of his treatment costs, or to pay only the first $250 of those costs, depending on the circumstances of the particular case. While the court left to the probation office the administrative detail of calculating the defendant's ability to pay, the court *itself* decided whether the defendant's punishment should include payment of some, all, or none of his rehabilitative costs, as Article III and § 3672 required it to do.

If the condition imposed upon Soltero were identical to that imposed in *Warden*, I would have no trouble upholding it. Unfortunately, where the *Warden* condition explicitly directed the defendant to pay the full costs of his treatment and delegated *only* the ability to pay determination to the probation office, the condition here goes a step further and delegates to the probation office responsibility for determining not only the defendant's ability to pay for court-ordered treatment, but also whether the defendant should be required to pay for some, all, or none of the treatment in the first instance. In essence, the condition here delegates the entire sentencing

decision—not just the ministerial "ability to pay" computation—to a non-judicial officer.

While, in practice, this may be only a semantic distinction—as it is likely a probation office faced with the condition in *Warden* and the condition imposed here would reach the same result (i.e., the office would compute the defendant's ability to pay and then require the defendant to pay treatment costs up to that amount)—deciding whether a defendant should be forced to pay for rehabilitative treatment (and, if so, to what extent) is a decision that is punitive in nature and, thus, Article III requires it to be made by a judge, not a probation officer. *Ex parte United States*, 242 U.S. at 41-42; *Stephens*, 424 F.3d at 880-81. I sympathize with the district court's inclination to delegate an administrative task to an administrative agency whose information about a defendant's financial situation may be superior to its own; however, the way in which the district court sought to achieve that end here delegates too much.