**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

                    v.

RAUL VEGA, a/k/a RAUL CAMPOS,
RAUL VEGA CAMPOS, ROBERTO
CAMPOS, CHUBS, LIL' CHUBS,
LITTLE CHUBS, LIL' CHUBBY, LIL
CHUB, TRAVIESO, MIDGET, LIL'
BEAR,
          *Defendant-Appellant.*

No. 07-50245

D.C. No.
CR-06-00975-1-
CAS

OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted
June 2, 2008—Pasadena, California

Filed September 24, 2008

Before: Alex Kozinski, Chief Judge, Dorothy W. Nelson and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea

13573

**COUNSEL**

Sean K. Kennedy, Federal Public Defender, Kathryn A. Young, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Thomas P. O'Brien, United States Attorney, Christine C. Ewell, Jeffrey A. Backhus, Assistant United States Attorneys, Los Angeles, California, for the plaintiff-appellee.

---

**OPINION**

BEA, Circuit Judge:

Raul Vega appeals several conditions of supervised release imposed by the district court after Vega pled guilty to knowing possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). The district court sentenced Vega to a term of five years' imprisonment and three years' supervised release.

First, Vega challenges the district court's requirement he abstain from alcohol during his three-year period of supervised release. Second, he challenges the requirement he perform twenty hours of community service per week when he is not employed at least part-time or enrolled in an educational or vocational program. Third, Vega challenges the requirement he not associate with any member of a criminal street gang.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the conditions of supervised release.[1]

---

[1]We address Vega's other contentions on appeal by separate memorandum disposition.

## I.

On October 27, 2006, acting on a tip that Vega sold narcotics, an undercover Los Angeles Police Department detective called Vega and asked him if he would sell the detective a "ball of crystal"—1/8 ounce of crystal methamphetamine. Vega agreed, and met the detective in a Los Angeles parking lot. The undercover detective approached Vega; Vega said he had brought the methamphetamine but needed to go home and weigh it. After Vega left the parking lot, officers stopped Vega's car and arrested him. During the search of the car, officers recovered 10.7 net grams of methamphetamine and a loaded .380 caliber semiautomatic pistol. The officers arrested Vega for being a felon in possession of a firearm.

Vega and the government entered into a plea agreement, the validity of which Vega does not challenge on appeal. Vega agreed to plead guilty to a single count of knowing possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).

Vega waived his right to appeal his sentence, so long as the sentence was for no longer than the statutory minimum of five years. He retained the right to appeal certain conditions of supervised release, including those he challenges in this appeal.

After Vega pleaded guilty to the single count, the Probation Office disclosed the presentence report ("PSR"). The PSR described Vega's extensive criminal history, beginning when he was arrested for battery at the age of fourteen. Many of Vega's arrests occurred while he was with members of the Harpys gang, to which he belonged since he was fifteen. The PSR also described Vega's numerous arrests between 2000 and 2006 for violations of an anti-gang injunction issued by the Los Angeles County Superior Court that prohibited Vega and other named gang members from associating with each

other in public within a certain area. The PSR further noted that Vega had a history of heroin abuse.

The Probation Office recommended a sentence of five years, a term of three years' supervised release, and a fine of $900. It further recommended various conditions of supervised release, including:

> 3. The defendant shall participate in an outpatient substance abuse treatment and counseling program that includes urinalysis, saliva and/or sweat patch testing, as directed by the Probation Officer. The defendant shall abstain from using illicit drugs and alcohol, and abusing prescription medications during the period of supervision;

> . . .

> 7. When not employed at least part-time and/or enrolled in an educational or vocational program, the defendant shall perform 20 hours of community service per week as directed by the Probation Officer;

> . . .

> 11. The defendant shall not associate with any member of any criminal street gang or disruptive group as directed by the Probation Officer, specifically, any member of the Harpys street gang.

The district court held Vega's sentencing hearing on May 14, 2007. At Vega's request, the district court waived the fine. Also in response to Vega's request, the district court struck from condition 11 the term "disruptive groups" and added an exception to allow Vega to associate with his brother, a member of the Harpys gang. Thus, as imposed, condition 11 prohibits Vega from associating with any member of any criminal street gang as directed by the Probation Officer, spe-

cifically any member of the Harpys street gang, with the exception of Vega's brother. The district court then imposed a sentence of five years, and a three-year term of supervised release. The district court imposed the conditions of supervised release recommended by the Probation Office, subject only to the modification to condition 11.

Vega's timely appeal followed.

**II.**

When the district court imposes a term of supervised release, it must consider the factors set forth in 18 U.S.C. § 3553(a), which include among others: the nature and circumstances of the offense and history and characteristics of the defendant; adequate deterrence to criminal conduct; protection of the public from further crimes of the defendant; and the provision of training, medical care, or other correctional treatment to the defendant. *See* 18 U.S.C. §§ 3553(a), 3583(c). The conditions must "involve[ ] no greater deprivation of liberty than is reasonably necessary for the purposes set forth" in the sentencing statute. 18 U.S.C. § 3583(d)(2).

We review conditions of supervised release properly challenged in the district court for abuse of discretion. *United States v. T.M.*, 330 F.3d 1235, 1240 n.2 (9th Cir. 2003). "In applying this standard of review, we give considerable deference to a district court's determination of the appropriate supervised release conditions, recognizing that a district court has at its disposal all of the evidence, its own impressions of a defendant, and wide latitude." *United States v. Stoterau*, 524 F.3d 988, 1002 (9th Cir. 2008) (internal quotation marks and citation omitted).

As to conditions not challenged in the district court, we review such forfeited claims for plain error. *United States v. Maciel-Vasquez*, 458 F.3d 994, 996 n.3 (9th Cir. 2006). Before we will correct a forfeited error, there must be

(1) error, (2) that is plain and (3) affects substantial rights. *Id.* "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks and citation omitted).

## III.

Vega challenges condition 3, which requires him to abstain from using alcohol during the three-year period of supervised release. Because Vega raised his claim as to this supervised release condition before the district court, we review for abuse of discretion. *See T.M.*, 330 F.3d at 1240.

[1] Vega contends the alcohol abstention condition is unrelated to his relevant history. To the contrary, the record reflects Vega has misused alcohol in the past. Vega admitted to drinking at the age of fourteen. At age sixteen, he was arrested at least twice for loitering with Harpys gang members drinking beer. In 2006, Vega was ordered by a California state court to attend Alcoholics Anonymous meetings weekly for one year.[2] Finally, there is a family history of alcohol abuse: Vega's father was an alcoholic who died of liver cirrhosis when Vega was twelve, and Vega's mother abused alcohol for five years after his father's death.

[2] Moreover, the alcohol abstention condition is reasonably related to the goal of furthering Vega's rehabilitation.

---

[2]After being found in contempt of court in February 2006 for violating the anti-gang injunction, Vega was given probation and ordered to attend Narcotics Anonymous meetings. In July 2006, probation was revoked and then later reinstated with an order that Vega attend Alcoholics Anonymous meetings. Although Vega contends this was merely a "venue" change for the Narcotics Anonymous meetings, the district court reasonably could conclude, based on the order to attend Alcoholics Anonymous, that Vega had a history of alcohol abuse which a prior court had found required counseling.

Vega has a well-documented history of drug abuse as reflected in the PSR, letters to the court from Vega's friends and family, and Vega's request to the court for drug counseling. Vega and his friends and family told the district court they thought his drug addiction led to the offense for which he was here convicted. "[I]t is hardly a secret that there is a tie between drug abuse and alcohol abuse." *United States v. Brown*, 235 F.3d 2, 6 (1st Cir. 2000) (upholding under plain error review a condition that defendant abstain from alcohol and all intoxicants because it was related to defendant's history of alcohol abuse, to his drug offense because there is a tie between drugs and alcohol, and to defendant's goal of remaining drug-free). A condition that requires Vega to stay completely sober by prohibiting him from using *any* intoxicating substance—whether drugs or alcohol—is "part of an integrated rehabilitative scheme." *United States v. Gementera*, 379 F.3d 596, 606 n.13 (9th Cir. 2004); *see also United States v. Sales*, 476 F.3d 732, 735-36 (9th Cir. 2007) (upholding under plain error review an alcohol abstention condition where defendant had no history of alcohol abuse and his offense did not involve alcohol, but the record revealed a history of drug abuse and need for drug treatment).

**[3]** Vega has a history of drug abuse and misuse of alcohol, he asked for drug treatment, and he claimed his offense was caused by his drug addiction. Thus, the condition that Vega stay completely sober and abstain from all intoxicating substances was reasonably related to Vega's history and the goals of rehabilitation and protection of the public. The district court did not abuse its discretion when it imposed this condition.[3]

---

[3]Contrary to Vega's contention, his case is readily distinguishable from *United States v. Betts*, 511 F.3d 872 (9th Cir. 2007), where we held a district court abused its discretion when it imposed an alcohol abstention condition where neither alcohol nor drugs played a role in the defendant's offense, the defendant had no history of alcohol or drug abuse, and the district court expressly stated it imposed the condition in an effort to change the public defender's office policy of instructing defendants not to answer probation officers' questions about drugs and alcohol. *Id.* at 879-80.

## IV.

Vega also challenges condition 7, which requires him to perform twenty hours of community service per week, as directed by the Probation Officer, when Vega is not employed at least part-time or enrolled in an educational or vocational program. Vega raised this claim before the district court; accordingly, we review it for abuse of discretion. *See T.M.*, 330 F.3d at 1240.

**[4]** We have not previously addressed a challenge to a condition of supervised release that requires community service. The Sentencing Guidelines, however, expressly provide that "[c]ommunity service may be ordered as a condition of probation or supervised release." U.S.S.G. § 5F1.3.[4] We agree with the Seventh Circuit that "the imposition of education, employment and community service conditions will further the statutory goal of providing 'the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.' " *United States v. McKissic*, 428 F.3d 719, 724 (7th Cir. 2005) (quoting 18 U.S.C. § 3553(a)(2)(D)) (upholding on plain error review a condition requiring the defendant to perform at least twenty hours of community service per week as directed by the Probation Office until gainfully employed). Community service is another opportunity for a defendant to obtain education and vocational training. *Id.* at 725.

**[5]** Moreover, Vega has a history of gang membership and scattered employment. Condition 7 encourages Vega to use

---

[4]The commentary to § 5F1.3 states, "[c]ommunity service generally should not be imposed in excess of 400 hours" to avoid heavy administrative burdens of selection of placements and monitoring of attendance. Neither the comment nor the Guidelines, however, prohibits the imposition of more than 400 hours. In any event, whether Vega might have to perform more than 400 hours of community service is speculative and will depend on whether he is working or in a training program during his period of supervised release.

his time productively—in work, education, or community service—rather than revert to gang activity. Thus, the condition is reasonably related to Vega's rehabilitation, prevention of recidivism, and protection of the public from future crimes.

Vega also contends the community service requirement is "unreasonable under the circumstances." Vega has worked in the past as a day laborer. He contends that as a day laborer he might have to spend hours waiting for work; if he is unsuccessful in securing employment, he then will be compelled to spend additional hours performing community service to comply with this requirement. His fear is based on speculation. Vega has held jobs other than day laborer. Moreover, the condition applies only if Vega is not working "at least part-time"; thus, it will not apply if Vega is successful in securing work at least some of the time.

Accordingly, the district court did not abuse its discretion when it imposed condition 7.[5]

## V.

Finally, Vega challenges condition 11, which prohibits him from association "with any member of any criminal street gang as directed by the Probation Officer, specifically, any member of the Harpys street gang." Before the district court Vega challenged only "the portion of the condition prohibiting association with 'disruptive groups' " and association with his brother. Vega did not challenge those aspects of condition 11 he now challenges on appeal. Accordingly, we review

---

[5]We reject Vega's contention the district court abused its discretion by failing to give a "justification" for the community service requirement. *See United States v. Betts*, 511 F.3d 872, 876 (9th Cir. 2007) ("[A] sentencing judge is not required to articulate on the record at sentencing the reasons for imposing each condition of supervised release, where we can determine from the record whether the court abused its discretion.") (footnote and internal quotation marks omitted).

these new claims for plain error. *See United States v. Maciel-Vasquez*, 458 F.3d 994, 996 n.3 (9th Cir. 2006).

**[6]** A defendant "has a separate due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison." *United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002) (per curiam). Vega contends condition 11 violates due process because it uses the impermissibly vague terms: "associate," "any criminal street gang," and "Harpys street gang." Vega's contention is foreclosed by our decision in *United States v. Soltero*, 510 F.3d 858 (9th Cir. 2007) (per curiam).

**[7]** In *Soltero*, we held the district court did not abuse its discretion when it imposed the following condition, which is nearly identical to condition 11: "The defendant shall not associate with any known member of any criminal street gang . . . as directed by the Probation Officer, specifically, any known member of the Delhi street gang." *Soltero*, 510 F.3d at 865. We held the term "associate" was not impermissibly vague: "The Supreme Court has held that 'incidental contacts' —such as those Soltero fears he would be punished for inadvertently engaging in—do not constitute 'association,' . . . and we hold that, with this limitation, 'men of common intelligence' need not guess at the meaning of 'association' in the context of" this condition. *Id.* at 866-67 (internal citation omitted).

**[8]** Further, we held the term "Delhi street gang" was "sufficiently clear": the district court was "entitled to presume that Soltero—who has admitted to being a member of this gang— is familiar with the Delhi gang's members . . . ." *Id.* at 866. Here too the district court was entitled to presume Vega was familiar with the Harpys street gang: there was ample undisputed evidence in the record that Vega had been a Harpys member since at least 1995.

**[9]** Finally, in *Soltero* we held the meaning of the term "criminal street gang" was sufficiently clear: the term is "slightly more ambiguous [than "Delhi street gang"]—but not unconstitutionally so." *Id.* at 866. Moreover, "[a]lthough . . . not crucial to our finding that the meaning of 'criminal street gang' would be apparent to the average person," we noted that 18 U.S.C. § 521(a) defines "criminal street gang."**⁶** *Id.* at 866 n.8.

**[10]** Accordingly, under *Soltero*, the terms "associate," "any criminal street gang," and "Harpys street gang," in condition 11 are not impermissibly vague.

As Vega correctly notes, however, the supervised release condition in *Soltero* expressly stated the defendant shall not associate with any *known* member of a criminal street gang, whereas condition 11 here is not expressly limited to known members. Vega contends he could face revocation of supervised release for unknowingly violating the condition by associating with someone whom he does not realize is a member of the Harpys or another criminal street gang.

**[11]** We construe condition 11 consistent with well-established jurisprudence under which we presume prohibited criminal acts require an element of *mens rea*. *See Staples v.*

---

**⁶**18 U.S.C. § 521(a) defines "criminal street gang" as:

an ongoing group, club, organization, or association of 5 or more persons—

(A)  that has as 1 of its primary purposes the commission of 1 or more of the criminal offenses described in subsection (c) [e.g., felony involving controlled substance for which the maximum penalty is not less than 5 years];

(B)  the members of which engage, or have engaged within the past 5 years, in a continuing series of offenses described in subsection (c); and

(C)  the activities of which affect interstate or foreign commerce.

*United States*, 511 U.S. 600, 605-06 (1994). Applying this presumption, we read the condition to prohibit knowing association with members of a criminal street gang. *See also United States v. Johnson*, 446 F.3d 272, 281 (2d Cir. 2006) ("Generally, supervised release provisions are read to exclude inadvertent violations."). So construed, the condition is not impermissibly vague.

Further,"[i]f and when [supervised release] is revoked, we will examine the findings to insure that [defendant's] due process right to notice of prohibited conduct has been observed and to protect him from unknowing violations." *United States v. Romero*, 676 F.2d 406, 407 (9th Cir. 1982) (rejecting as premature defendant's contention that a condition of probation that prohibited him from association with any person convicted of any drug offense or who is unlawfully involved with drugs was vague and overbroad because it might permit revocation of probation for unknowing association).

**AFFIRMED.**