**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-50115 |
| Plaintiff - Appellee, | D.C. No. 2:10-cr-00351-ODW-7 |
| v. | |
| CARLOS RIVERA, AKA Chino, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-50135 |
| Plaintiff - Appellee, | D.C. No. 2:10-cr-00351-ODW-29 |
| v. | |
| RAUL PRIETO, AKA Crook, | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-50156 |
| Plaintiff - Appellee, | D.C. No. 2:10-cr-00351-ODW-27 |
| v. | |

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

JESSICA MEDINA,

Defendant - Appellant.

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted January 8, 2015
Pasadena, California

Before: KOZINSKI, WARDLAW, and W. FLETCHER, Circuit Judges.

In consolidated appeals, Carlos Rivera, Raul Prieto, and Jessica Medina appeal their jury convictions arising out of activities connected with the Black Angels, a Mexican Mafia-affiliated street gang operating in Ontario, California. We affirm.

Under 18 U.S.C. § 2518(1)(c), a wiretap affidavit must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." While "[e]ach wiretap application, standing alone, must satisfy the necessity requirement," *United States v. Carneiro*, 861 F.2d 1171, 1176 (9th Cir. 1988) (emphasis omitted), the nature of the conspiracy with which the individual is allegedly involved and prior investigative work may inform the determination of whether each individual investigation was adequate. *See United*

2

*States v. Garcia-Villalba*, 585 F.3d 1223, 1229–30 (9th Cir. 2009); *United States v. Rivera*, 527 F.3d 891, 898, 903 (9th Cir. 2008). The affidavit for Target Telephone 9 provided details regarding the range of traditional investigative techniques that had already been used in investigating other members of the conspiracy, including physical surveillance; the use of confidential informants; financial investigations; a mail cover for the residence of the wife of a Mexican Mafia and Black Angels member; the execution of a search warrant; parole searches; several pen registers and toll record searches; two trash searches; and recorded jail calls. The affidavit also discussed techniques targeting Rivera in particular, including two physical surveillance attempts on May 26, 2009 and July 3, 2009; a search of telephone toll records; and a search for recorded jail calls. We agree with the district court that this affidavit was adequate. Although the trash search section of the affidavit stated that Rivera's address was unknown, this misstatement was immaterial. *See United States v. Ippolito*, 774 F.2d 1482, 1486–87 (9th Cir. 1985). The district court did not abuse its discretion when it concluded that a wiretap was reasonably necessary to fulfill the purposes of the investigation and "develop an effective case against those involved in the conspiracy." *Rivera*, 527 F.3d at 902 (internal quotation marks omitted).

A Department of Justice wiretap authorization "is facially sufficient if, on the basis of the information that appears on its face, it could reasonably be believed that it meets . . . the requirement that a duly empowered Justice Department official authorize the application for the particular wiretap being sought." *United States v. Staffeldt*, 451 F.3d 578, 582 (9th Cir. 2006), *as amended by* 523 F.3d 983 (9th Cir. 2008). The authorization letter here was signed by a statutorily designated official and correctly identified all of the subscriber information, with the result that a reasonable jurist could compare the contents of the letter with the contents of the application and conclude that it specifically authorized a wiretap on Target Telephone 9.

A defendant is entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), "if he can make a substantial preliminary showing that the affidavit contained intentionally or recklessly false statements, and that the affidavit purged of its falsities would not be sufficient to support a finding of probable cause." *United States v. Meling*, 47 F.3d 1546, 1553 (9th Cir. 1995) (internal quotation marks and alterations omitted). "Mere negligence in 'checking or recording the facts . . .' is not sufficient to warrant a *Franks* hearing." *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir. 1987) (quoting *Franks*, 438 U.S. at 170). Although the government misstated in the trash search section of the affidavit that Rivera's

4

address was unknown, it provided the information elsewhere in the affidavit. These circumstances suggest that the government did not intentionally conceal Rivera's address from the reviewing judge, but rather made a negligent mistake. Medina accordingly failed to make the necessary showing.

Prieto objects to the admission of testimony from Black Angels gang leader David Navarro regarding the meaning of the term "bird" and argues that the prosecution mischaracterized Navarro's testimony in its closing argument. However, Navarro's testimony was admissible as a lay opinion supported by his experience as the leader of the gang's extortion activities and participation in methamphetamine sales. *See United States v. Martinez*, 657 F.3d 811, 819 (9th Cir. 2011); *United States v. Freeman*, 498 F.3d 893, 900 n.1, 904–05 (9th Cir. 2007). Further, the prosecutor's argument that a coded conversation between Rivera and Prieto referred to methamphetamine was reasonable because the conversation was clearly about drugs and was followed by a delivery to Rivera of methamphetamine. *See United States v. Blueford*, 312 F.3d 962, 968 (9th Cir. 2002). Finally, if there was any misstatement about Navarro's testimony, it was rendered harmless by the jury instructions, defense counsel's objection, and the prosecutor's clarification. *See United States v. Bracy*, 67 F.3d 1421, 1431 (9th Cir. 1995).

Prieto argues that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by impermissibly withholding jailhouse notes indicating that there was another member of the Black Angels gang who went by the moniker "Crook." However, the notes to which Prieto refers are not necessarily exculpatory because they appear to be addressed to at least four individuals. Police records did not contain any monikers used by the man who was allegedly in possession of the notes, and Prieto points to no other evidence from which the police could have determined that the man was "Crook" rather than one of the other addressees. Nor was Prieto prejudiced, as the evidence was of minimal relevance to the drug conspiracy charge for which he was actually convicted and he had the opportunity to use the evidence when he questioned the officer who found the notes.

Prieto contends that the district court erred when it required him to subpoena a law enforcement witness. However, Prieto presents no reason why he could not have subpoenaed the witness and no authority for the proposition that it was an abuse of discretion to require him to do so.

The evidence is sufficient to allow a rational factfinder to convict Prieto based on the distribution of methamphetamine. The recorded telephone calls demonstrate Prieto's willingness to sell half an ounce of a larger supply of some controlled substance. Prieto never questioned Rivera regarding what type of drugs

6

Rivera was expecting when he "re-upped," allowing for a reasonable inference that Prieto understood Rivera's reference. This inference is bolstered by Navarro's testimony that Rivera had conducted methamphetamine deals from Prieto's mother's house in Prieto's presence and with Prieto's knowledge, demonstrating that Prieto knew that Rivera trafficked in methamphetamine. Finally, Rivera was arrested with nearly half a pound of high-purity methamphetamine following his conversation with Prieto. Because a conviction can be proven through circumstantial evidence and inferences drawn from that evidence, *United States v. Moreland*, 622 F.3d 1147, 1169 (9th Cir. 2010), and because a reasonable factfinder could conclude that Prieto knew Rivera was distributing methamphetamine and that Prieto was requesting half an ounce of methamphetamine to sell, Prieto's argument fails.

In the case of a mistrial, the Speedy Trial Act requires that the government retry a defendant "within seventy days from the date the action occasioning the retrial becomes final." 18 U.S.C. § 3161(e). If this provision is violated, the district court must dismiss the indictment upon the defendant's motion. *Id.* § 3162(a)(2). "Whether to dismiss with or without prejudice is left to the 'guided discretion of the district court.'" *United States v. Lewis*, 518 F.3d 1171, 1176 (9th Cir. 2008) (quoting *United States v. Taylor*, 487 U.S. 326, 334–35 (1988)). The

7

statute provides three factors, in addition to prejudice to the defendant, that the district court must consider: "seriousness of the offense; the facts and circumstances of the case which led to dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2); *Lewis*, 518 F.3d at 1176. The district court is statutorily bound to "carefully consider those factors as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review." *Taylor*, 487 U.S. at 336. If the district court fails to make specific factual findings and apply the Speedy Trial Act factors before dismissing without prejudice, we may make the necessary findings so long as the record is complete and the defendant has had "the opportunity to be heard on the question." *United States v. Pena-Carrillo*, 46 F.3d 879, 882 (9th Cir. 1995).

Prieto is correct that the district court never explicitly considered the Speedy Trial Act factors before ruling that the charge should be dismissed without prejudice. However, because the court held a hearing on the issue, the record is adequately developed, and none of the statutory factors support Prieto's claim. Accordingly, we affirm the district court's decision to dismiss Count One without prejudice.

Both Prieto and Medina argue that the district court erred by denying them minor role reductions under U.S.S.G. § 3B1.2(b). Despite Prieto's arguments that he "was just an individual who was begging to become a participant, but had not yet been accepted," the prosecution presented evidence that Prieto was affirmatively seeking to obtain drugs from Rivera, and the jury found that he conspired to distribute at least five grams of actual methamphetamine or fifty grams of methamphetamine mixture. Thus, the district court did not clearly err in concluding that Prieto had not carried the burden of proving that he was substantially less culpable than the other participants in the drug conspiracy. *See United States v. Cantrell*, 433 F.3d 1269, 1283 (9th Cir. 2006).

The government presented evidence that Medina hid the keys to the car containing the methamphetamine from the police, lied to the police about the car, instructed the car's owner to lie, and attempted to continue Rivera's drug business after his arrest. The district court therefore did not clearly err in finding that she was not a minor participant in the drug conspiracy.

Rivera and Prieto argue that their sentences were unreasonable under 18 U.S.C. § 3553(a). However, the court considered all of the § 3553(a) factors and sentenced both Rivera and Prieto within the Guidelines range. *See United States v. Valencia-Barragan*, 608 F.3d 1103, 1108 (9th Cir. 2010). Although the district

9

court could have "exercise[d] its discretion to impose a below-Guidelines sentence," neither Rivera nor Prieto present "unusual circumstances" to demonstrate that the district court abused its discretion by refusing to do so. *See United States v. Carter*, 560 F.3d 1107, 1120 (9th Cir. 2009); *see also United States v. Laurienti*, 731 F.3d 967, 976 (9th Cir. 2013) (recognizing that within-Guidelines sentences are reasonable "in the overwhelming majority of cases" (internal quotation marks omitted)).

Although a defendant's Sixth Amendment right to a public trial may be violated when the court orders the courtroom cleared of all family members, *see United States v. Rivera*, 682 F.3d 1223, 1231–32 (9th Cir. 2012), the district court's comment that the defendants should not bring an infant to sentencing did not demonstrate an intent to prevent any other family members, including children, from attending.

Finally, Rivera argues that the supervised release condition limiting his association with other gang members impermissibly prohibits him from associating with Prieto, with whom he has a family-like relationship. We have generally approved supervised release conditions that prohibit individuals from associating with gang members. *See United States v. Johnson*, 626 F.3d 1085, 1091 (9th Cir. 2010) (citing *United States v. Vega*, 545 F.3d 743, 749–50 (9th Cir. 2008); *United*

10

*States v. Soltero*, 510 F.3d 858, 866–67 (9th Cir. 2007) (per curiam)).  The district court did not plainly err in imposing this condition.

**AFFIRMED.**